# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SOUTHERN ATLANTIC COMPANIES,**
**LLC and SOUTHERN ATLANTIC**
**ELECTRIC COMPANY, INC.,**

      **Plaintiffs,**

**v.**                                                         **Case No:   6:15-cv-254-Orl-31TBS**

**SCHOOL BOARD OF ORANGE**
**COUNTY, FLORIDA,**

      **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the motions to dismiss (Doc. 3, 5) filed by the Defendant, the School Board of Orange County, Florida (henceforth, the "School Board"), and the responses in opposition filed by Southern Atlantic Companies, LLC (henceforth, "Southern Atlantic") (Doc. 14) and by Southern Atlantic Electric Company, Inc. (henceforth, "SAE") (Doc. 13).

### I.   Background

According to the allegations of the First Amended Complaint (Doc. 2-20) (henceforth, the "FAC"), which are accepted in pertinent part as true for purposes of resolving these motions to dismiss, this dispute stretches back to 2010, when Southern Atlantic submitted a bid to perform electrical work on a renovation project at Oak Ridge High School in Orange County.   Wharton-Smith, Inc. ("Wharton-Smith"), the School Board's construction manager on the renovation project, did not select Southern Atlantic's bid.   Believing it should have been the winning bidder,

Southern Atlantic initiated a bid protest against the School Board.  The School Board tendered the defense of the bid protest to Wharton-Smith, which retained counsel to defend the School Board.

Florida Statute § 255.0516[1] and School Board policy require entities engaging in bid protests to obtain a bond – referred to as a "protest bond" – in the event the Board is awarded its attorney's fees and costs against the protester.  Southern Atlantic obtained a protest bond (henceforth, the "Bond") from International Fidelity Insurance Company (henceforth, "International Fidelity") in the amount of $127, 920.  To obtain the Bond, Southern Atlantic was required to execute an indemnity agreement in favor of International Fidelity.  In that agreement, SAE also agreed to indemnify International Fidelity.

Southern Atlantic was unsuccessful in its bid protest against the School Board.  The Administrative Law Judge ("ALJ") presiding over the proceedings concluded that Wharton-Smith was not the School Board's agent and therefore the School Board could not be held responsible for Wharton-Smith's decision to select someone other than Southern Atlantic for the electrical

---

[1] In pertinent part, Fla. Stat. § 255.0516 provides that

> if a school board, a community college board of trustees, or a state university board of trustees uses procedures pursuant to chapter 120 for bid protests, the board may require the protestor to post a bond amounting to:
>
> (1)   Twenty-five thousand dollars or 2 percent of the lowest accepted bid, whichever is greater, for projects valued over $500,000; and
>
> (2)   Five percent of the lowest accepted bid for all other projects,
>
> conditioned upon payment of all costs and fees which may be adjudged against the protestor in the administrative hearing. If at the hearing the agency prevails, it shall recover all costs and attorney's fees from the protestor; if the protestor prevails, the protestor shall recover from the agency all costs and attorney's fees.

subcontract. On November 8, 2010, the School Board submitted a proposed order to the ALJ. In the proposed order, the School Board was awarded its attorney's fees and costs. However, the ALJ's recommended order – issued on November 10, 2010 – did not contain such an award.

Both parties had the right to submit "exceptions" to the ALJ's recommended order, but only Southern Atlantic did so. On February 8, 2011, after a hearing on Southern Atlantic's exceptions, the School Board entered the ALJ's recommended order without alteration. Neither party appealed from the entry of that order.

On February 24, 2011, the School Board submitted a claim on the Bond to International Fidelity for the attorney's fees and costs incurred during the bid protest. On May 26, 2011, International Fidelity denied the claim on the grounds that the ALJ had not awarded fees and costs. Subsequently, the School Board assigned its rights with respect to the Bond to Wharton-Smith. Wharton-Smith filed suit (henceforth, the "Bond Action") in Florida court against International Fidelity on August 12, 2011. On November 6, 2012, the Florida court found that it lacked subject matter jurisdiction over Wharton-Smith's claim against the Bond. The Florida court awarded summary judgment to International Fidelity.

On October 21, 2014, Southern Atlantic and SAE filed the instant suit in state court against the School Board, generally alleging that the School Board had retaliated against Southern Atlantic for having initiated the bid protest. On January 20, 2015, Southern Atlantic and SAE filed the FAC, asserting for the first time that the School Board's actions violated 42 U.S.C. §1983. Relying on this alleged violation of federal law, the School Board timely removed the case to this court pursuant to 28 U.S.C. §§1331 and 1446(b)(3).

In the FAC, the Plaintiffs assert the following claims: retaliation in violation of Florida's Public Sector Whistle-Blower's Act (henceforth, the "FPSWA"), §§112.3187-112.31895, Florida

Statutes (Count I); First Amendment retaliation in violation of 42 U.S.C. § 1983; breach of contract (Count III); and common law indemnity (Count IV).  In Count V of the FAC, the Plaintiffs seek a declaratory judgment that the School Board had not had the right to assign the Bond to Wharton-Smith and had been obligated to return the Bond to Southern Atlantic.[2]  By way of the instant motions, the School Board seeks dismissal as to all five counts asserted by SAE (Doc. 3) and by Southern Atlantic (Doc. 5).

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984).  In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).  The Court must also limit its consideration to the pleadings and any exhibits attached thereto.  Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir.2007).  Conclusory

---

[2] The Plaintiffs assert that the Bond was returned on December 3, 2014 – after the filing of the suit, but before the filing of the FAC.  (FAC at 8).

allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'"  *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.  Analysis

#### A.  Claims asserted by SAE

The School Board argues that SAE has failed to state any claims against it and cannot do so.  The School Board asserts that the only connection alleged between SAE and the instant dispute is that SAE agreed to indemnify International Fidelity in connection with the protest bond obtained by Southern Atlantic and that SAE has not included any allegations in the First Amended Complaint that would support a finding of liability in its favor.  In response, SAE challenges these assertions only in regard to Count IV, the indemnity count.[3]  Accordingly, the Court finds that the remaining four counts should be dismissed with prejudice as to SAE.

---

[3] SAE also argues that it has standing to pursue claims in this case, but this issue was not raised by the School Board.

In Count IV, SAE (along with Southern Atlantic) seeks indemnification from the School Board "for the damages they incurred in defending the Bond Action, indemnifying [International Fidelity], and in pursuing this Action – all of which include, but are not limited to, a substantial amount of attorneys' fees and costs." (FAC at 14). In its response to the motion to dismiss, however, SAE does not attempt to justify its entitlement to indemnification for any damages it incurred in defending the Bond Action or in bringing this suit.

SAE does allege in Count IV that it was sued, pursuant to the indemnity agreement, by International Fidelity, which sought to recover costs and fees expended in defending Wharton-Smith's claim against the Bond.[4] SAE argues that it is "a contractual indemnitor with vicarious or derivative liability to IFIC" and therefore it may seek common law indemnity from the School Board "since the School Board is responsible for the wrong that caused injury to IFIC." (Doc. 13 at 6).

Under Florida law, common law indemnity is an equitable remedy that arises out of "obligations imposed through special relationships." *Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.*, 853 So. 2d 1072, 1099 (Fla. 5th DCA 2003). To state a claim for common law indemnity, a party must allege

> that [it] is without fault, that another party is at fault, and that a special relationship between the two parties makes the party seeking indemnification vicariously, constructively, derivatively, or technically liable for the acts or omissions of the other party.

*Tsafatinos v. Family Dollar Stores of Florida, Inc.*, 116 So. 3d 576, 581 (Fla. 2d DCA 2013).

---

[4] Although a copy of International Fidelity's complaint for indemnity was attached to the First Amended Complaint (Doc. 2-19), the record does not indicate whether that suit has been resolved.

Although there is an allegation in the FAC that International Fidelity has sued the Plaintiffs, the FAC does not contain an allegation that either Plaintiff has paid (or will have to pay) anything to International Fidelity in connection with the Bond Action.  Assuming *arguendo* that SAE has had to pay International Fidelity, the allegations in the FAC are that the payment was required by the indemnification agreement with International Fidelity rather than because of some "special relationship" between SAE and the School Board.  Similarly, there is no allegation that the School Board was under any obligation to pay International Fidelity's costs and fees in the Bond Action (in which, it should be remembered, International Fidelity was sued by Wharton-Smith, not the School Board).  Because of this, any payment by SAE for those costs and fees could not have been based on vicarious, constructive, derivative, or technical liability for acts or omissions of the School Board.  Count IV will also be dismissed as to SAE.

**B.     Claims asserted by Southern Atlantic**

**Count I: Florida Public Sector Whistle-Blower Claim**

The School Board argues that Southern Atlantic did not satisfy several prerequisites to bringing suit under the FPSWA.  First, the School Board argues that before bringing this suit, Southern Atlantic was required to "initiate an action with the Florida Commission on Human Relations, the Office of the Governor, or with the School Board itself, but only if the School Board had a procedure for Whistleblower claims."  (Doc. 5 at 1).  The School Board does not cite to the portion of the FPSWA that allegedly imposes this requirement.  The School Board cites to two cases that apparently are intended to support this assertion but does not provide pinpoint citations.  (In addition, so far as the Court can tell, the language employed by the School Board and the cases it cites deal with whistleblower claims brought by public employees, which

Southern Atlantic is not.)   The Court cannot discern the School Board's argument on this point well enough here to determine whether it has any merit.

The School Board also argues that whistle-blowers are required to exhaust their administrative remedies before filing suit under the FPSWA, and that Count I should be dismissed because Southern Atlantic failed to appeal its loss of the bid protest.   (Doc. 5 at 2).   However, the statute requires that whistle-blowers exhaust their administrative remedies in regard to the alleged retaliation, not the initial disclosure.   In other words, an employee who loses his or her job after revealing information that embarrasses his or her public agency would have to exhaust administrative remedies as to the job loss, not the revelation.   *See, e.g.*, *Pino v. City of Miami*, 315 F.Supp.2d 1230, 1251 (S.D.Fla. 2004) (dismissing FSPWA claim because police officer plaintiff failed to file Civil Service complaint as to his allegedly retaliatory transfer).   In this case, the failure to select Southern Atlantic's bid for the Oak Ridge High School renovation is not alleged to have been retaliatory, and therefore Southern Atlantic was not obligated to appeal the adverse decision in its bid protest before seeking relief under the FPSWA.

Next, the School Board asserts that Southern Atlantic's complaint was too vague to state a claim under the FPSWA.   However, the case cited by the School Board in support of its argument involved a dismissal by the Florida Commission on Human Relations of a whistleblower complaint that failed to satisfy a provision of the Florida Administrative Code.   *See Caldwell v. Florida Department of Elder Affairs*, 121 So. 3d 1062, 1064 (Fla. 1st DCA 2013).   The School Board has not shown that this provision of the Florida Administrative Code governs pleading standards before this court.

Finally, the School Board asserts that Southern Atlantic filed this suit outside the 180-day statute of limitations set forth in Fla. Stat. § 112.3187(8).   (Doc. 5 at 2-3).   As the School Board

notes, it is not entirely clear from the FAC when the limitations period began to run.  Southern Atlantic argues that the retaliation consisted of the School Board's refusal to return the Bond, Doc. 14 at 9-10, but never states (in the FAC or elsewhere) the date upon which the Bond should have been returned.  Rule 28-110.005 of the Florida Administrative Code, which governs bid protest bonds, provides in pertinent part:

> If, at the conclusion of the proceeding and any appellate proceedings, the petitioner prevails, the agency shall return the bond, cashier's check or money order to the petitioner. If the agency prevails but the petitioner is not ordered to pay costs, the agency shall return the bond or alternate security to the petitioner.

Fla. Admin. Code R. 28-110.005(4).  Impliedly, an agency that prevails on the protest but is not awarded fees must return the bond at the conclusion of the proceeding or, where applicable, at the conclusion of any appeal.  The final order as to the bid protest was entered on February 8, 2011, and there were no appellate proceedings.  The instant suit was filed in state court on October 21, 2014, more than three years after conclusion of the bid protest.

Southern Atlantic does not disagree that the Bond should have been returned as soon as its bid protest ended, and it does not dispute the applicability of the 180-day statute of limitations in Fla. Stat. § 112.3187(8).  Rather, Southern Atlantic argues that the refusal to return the Bond was a "continuing act of retaliation, as it was a result of a pattern or practice by the School Board to perpetuate the wrong," Doc. 14 at 9-10, and therefore the limitations period did not begin to run until the Bond was returned on December 3, 2014.  Southern Atlantic offers no explanation as to how the School Board's failure to return the Bond could constitute a "continuing act" of retaliation.  Southern Atlantic cites – without discussion or pinpoint citation – to the case of *Jacobs v. Board of Regents*, 473 F. Supp. 663 (S.D.Fla. 1979).  *Jacobs* is a Title VII case in which the court found that the plaintiff's complaints that her salary and rank were lower than those of her male counterparts "right up to the day of the filing of her complaint and presumably until

- 9 -

the present day" made dismissal of her complaint on statute of limitations grounds "inappropriate". *Id.* at 671.   Presumably, Southern Atlantic believes the instant situation to be analogous.   But the citation to *Jacobs* is unpersuasive.   First, it is a Title VII case, not a whistleblower case, with a different statute of limitations at issue.   Second, the plaintiff in *Jacobs* – whose pay was allegedly smaller than it should have been due to discrimination – would have been harmed anew every time she received a paycheck.   In this case, there was only one instance where the School Board was allegedly obligated to return the Bond.

Count I will be dismissed with prejudice.

### Count II:   First Amendment Retaliation

The School Board argues that First Amendment retaliation claims can only be brought by government employees or by independent contractors with preexisting business relationships with the government.   Because Southern Atlantic was neither (at least with respect to the Oak Ridge High School renovation project), it is the School Board's position that Southern Atlantic cannot assert a First Amendment Retaliation claim.   Southern Atlantic responds that its First Amendment retaliation claim is based upon actions taken by the School Board in its capacity as a sovereign, rather than its capacity as an employer.   In addition, the law is clear that private citizens may bring First Amendment retaliation claims.   *See*, *e.g.*, *Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005) (discussing difference between public employment retaliation cases and retaliation cases involving private citizens).

The School Board also argues that a failure to return a bond cannot constitute retaliation for purposes of a First Amendment claim, but provides no authority to support this proposition.

> To state a retaliation claim ... a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the

- 10 -

> retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir.2005).   As to the second prong, "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."   *Id.* at 1254.

*Thompson v. Hall*, 426 Fed. Appx. 855, 859 (11th Cir. 2011).   The Court cannot say that, as a matter of law, the failure to return a bond could never deter a person of ordinary firmness from the exercise of First Amendment rights.

The School Board further argues that Southern Atlantic's bid protest cannot constitute speech on a matter of public concern, and therefore be subject to First Amendment protection, because it was made primarily for Southern Atlantic's benefit, and because the bid protest was meritless from its inception.   These are factual disputes, which are not appropriate for resolution at this stage of the proceedings.

### Count III:   Breach of Contract

In Count III, Southern Atlantic argues that the School Board breached the terms of the Bond by failing to return it at the conclusion of the bid protest.   More particularly, Southern Atlantic argues that every bond creates a tripartite relationship between the obligor, the surety, and the obligee, and that, because they are contracts, every bond incorporates every Florida law into its terms, such that the failure to obey even an administrative rule by one of the three parties to the contract constitutes a breach of that contract.   (Doc. 13 at 15-17).   Accordingly, the School Board's failure to return the Bond at the conclusion of the bid protest as required by Fla. Admin. Code R. 28-110.005(4) was a breach of the Bond.

Southern Atlantic's argument goes too far.   Under Florida law, bonds and other contracts do not incorporate every law, just those

> existing at the time and place of the making of the contract and where it is to be performed <u>which may affect its validity, construction, discharge and enforcement</u>.

- 11 -

*Shavers v. Duval Cnty.*, 73 So. 2d 684, 689 (Fla. 1954) (emphasis added).   The administrative rule relied on by Southern Atlantic would not affect the validity, construction, discharge, or enforcement of the Bond and therefore would not have been incorporated into it.

In addition, while surety bonds create a "tripartite relationship" between the parties involved, Southern Atlantic has not cited any cases permitting an obligor to enforce a bond against an obligee.   At most, the cases cited by Southern Atlantic provide that the obligee cannot alter the terms of the underlying obligation and then seek to enforce the bond against the surety.   *See, e.g.*, *Matt Howard Bail Bonds v. Escambia County Clerk of Court*, 13 So. 3d 109, 111 (Fla. 1st DCA 2009) (where State added additional felony charge and thereby increased risk that defendant would flee, surety was absolved from liability on bond that had been issued before charge was added) *and see Pennsylvania Nat. Mut. Cas. Ins. Co. v. City of Pine Bluff*, 354 F.3d 945, 952 (8th Cir. 2004) (discussing a "series of federal decisions which support the proposition that a bond obligee may not increase the surety's risk or otherwise undermine the surety's subrogation rights").   Count III fails as a matter of law and will be dismissed with prejudice.

**Count IV – Common Law Indemnity**

Southern Atlantic's claim in Count IV fails for the same reasons that SAE's claim for common law indemnity failed:   Even assuming that Southern Atlantic has had to make payment to International Fidelity, any payment is alleged in the FAC to have resulted from the indemnification agreement between Southern Atlantic and International Fidelity rather than because of some "special relationship" between Southern Atlantic and the School Board, as required to state a claim for common law indemnity.   Moreover, there is no allegation that the School Board was obligated to pay International Fidelity's costs and fees, and therefore any payment by Southern Atlantic for those costs and fees could not have been based on vicarious,

constructive, derivative, or technical liability for acts or omissions of the School Board.   Count IV will also be dismissed with prejudice.

**Count V – Declaratory Judgment**

In Count V of the FAC, Southern Atlantic seeks a declaration that "the Bond was required to be returned to [Southern Atlantic]" and that the School Board "had a duty to return the Bond and thus did not have the right to assign the Bond to Wharton-Smith".   According to the allegations of the FAC, the Bond was returned on December 3, 2014.   (FAC at 8).   The School Board argues that the return of the Bond has rendered Count V moot.   In making this argument, the School Board – for reasons the Court cannot discern – discusses the distinction between returning a copy of a bond and returning an "original" bond.   (Doc. 5 at 3).   Southern Atlantic seizes on this discussion to argue that the School Board intends to pursue a claim against the Bond based on a copy, and therefore Count V is not moot.   (Doc. 14 at 20).

After reviewing the motion, it is clear that, contrary to Southern Atlantic's contention, the School Board is not suggesting that it intends to pursue a claim against the Bond.   Even if the School Board were making such a suggestion, it would not have any impact on the issue of whether Count V has become moot.   Count V was only concerned with the School Board's obligation to return the Bond and its ability to assign it to Wharton-Smith, not its intention to pursue another claim against it.   Count V will be dismissed with prejudice.

**IV.   Conclusion**

In consideration of the foregoing, it is hereby **ORDERED** that the motions to dismiss (Doc. 3, 5) filed by the Defendant, the School Board of Orange County, Florida are **GRANTED IN PART AND DENIED IN PART**, as set forth above.   Counts I, III, IV and V are

**DISMISSED WITH PREJUDICE** as to both parties.  Count II is also **DISMISSED**

**WITHPREJUDICE**, but only in regard to Southern Atlantic Electric Company, Inc.


**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 7, 2015.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Party