# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SOUTHERN ATLANTIC COMPANIES,**
**LLC, EDWARD HUTCHINS and**
**RAYMOND MCINTOSH,**

       **Plaintiffs,**

**v.**                                                          **Case No:   6:15-cv-254-Orl-31TBS**

**SCHOOL BOARD OF ORANGE**
**COUNTY, FLORIDA,**

       **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 38) filed by the Defendant, School Board of Orange County, Florida (henceforth, the "School Board"), the response in opposition (Doc. 70) filed by the Plaintiffs, and the reply (Doc. 83) filed by the School Board.

### I.  Background

Plaintiff Southern Atlantic Companies, LLC ("Southern Atlantic") is an electrical subcontractor.  Plaintiffs Edward Hutchins and Raymond McIntosh are the principal owners of Southern Atlantic, with Hutchins serving as president and McIntosh serving as vice president.  In 2010, Southern Atlantic bid on electrical work to be performed at Oak Ridge High School in Orange County.  The School Board had hired Wharton-Smith, Inc. ("Wharton-Smith") to serve as construction manager on the project.  Wharton-Smith did not accept Southern Atlantic's bid for the work.

Southern Atlantic filed a bid protest against the School Board, arguing that it had submitted the lowest bid and should have been selected. As required by statute, Southern Atlantic posted a bond (henceforth, the "Protest Bond") for "payment of all costs and fees which may be adjudged against the protestor at the administrative hearing." Fla. Stat. § 255.0516. Ultimately, the bid protest was unsuccessful, with an Administrative Law Judge ("ALJ") ruling that Southern Atlantic could not proceed against the School Board because the decision to accept another contractor's bid had been made by Wharton-Smith.

In February 2011, the School Board sought to recover from the Protest Bond the attorneys' fees and costs it had incurred due to the protest. The surety denied the claim on the grounds that the ALJ had not awarded costs and fees to the School Board. In August 2011, the School Board assigned its rights with respect to the Protest Bond to Wharton-Smith, which had funded the School Board's defense of the bid protest. Wharton-Smith then filed suit in state court to recover fees and costs from the Protest Bond. This effort was also unsuccessful, with the state court judge granting summary judgment to the surety on the grounds that the only entity with jurisdiction over the fees and costs issue was the Division of Administrative Hearings, which had resolved the bid protest. Wharton-Smith appealed, but the appellate court affirmed the state court judge's decision in October 2013.

In October 2014, Southern Atlantic and an affiliated company, Southern Atlantic Electric Company, Inc. ("SAE"), filed the instant suit, alleging that the School Board had retaliated against Southern Atlantic for filing the bid protest by reducing the amount of contracting work given to Southern Atlantic and SAE and by refusing to return the Protest Bond at the conclusion of the bid protest in February 2011.[1] In January 2015, Southern Atlantic and SAE amended their complaint

---

[1] It appears from the record that the Protest Bond was not returned until December 2014.

- 2 -

to add a claim under 42 U.S.C. §1983; a month later, the School Board removed the case to this Court.  On May 7, 2015, the undersigned granted in part a motion filed by the School Board, dismissing with prejudice the Plaintiffs' state law whistleblower claim, their breach of contract claim, their common law indemnity claim, and their effort to obtain a declaratory judgment. (Doc. 22 at 13-14).  The sole remaining count – the Section 1983 claim – was dismissed as to SAE, only.  (Doc. 22 at 14).

On July 28, 2015, Southern Atlantic filed its Second Amended Complaint (Doc. 30), which added Hutchins and McIntosh as parties.  The Second Amended Complaint's only count asserts a Section 1983 claim as to all three of the Plaintiffs for retaliation in violation of the First Amendment.  (Doc. 30 at 14).  By way of the instant motion, the School Board seeks summary judgment as to the claims of Hutchins and McIntosh.

## II.     Legal Standards

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation

omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

### III.    Analysis

> To prevail on a First Amendment retaliation claim and prove a constitutional violation, a plaintiff must establish (1) his or her speech was protected by the First Amendment, (2) the defendant's retaliatory acts would likely deter a person of ordinary firmness from exercising his or her First Amendment rights, and (3) a causal connection exists between the retaliatory actions and the adverse effect on the protected speech.

*Bennett v. Hendrix*, 325 Fed. Appx. 727, 737 (11th Cir. 2009) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).[2]

The School Board offers two primary arguments in favor of summary judgment. First, the School Board argues that neither Hutchins nor McIntosh engaged in any constitutionally protected activity. Second, the School Board asserts that there is no evidence that it retaliated against either of these individuals. The two arguments will be addressed in turn.

---

[2] Although it does not affect the outcome of this case, the Court notes that the formulation adopted by the Eleventh Circuit differs from that adopted by other Circuits in First Amendment retaliation cases. Specifically, while the Eleventh Circuit requires that plaintiffs demonstrate, as the third element of such a claim, a connection between "the retaliatory actions and the adverse effect on the protected speech," *Bennett v. Hendrix*, 325 Fed. Appx. at 737, other Circuits instead require a showing of a connection between the protected activity and the retaliation. *See, e.g.*, *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 499 (4th Cir. 2005) (plaintiff must show "a causal relationship between her protected activity and the defendants' conduct") *and Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (plaintiff must show "the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct") (citations omitted).

### A.     Protected Activity

Hutchins and McIntosh argue that they engaged in First Amendment-protected activity by, among other things, "writing and speaking out to the School Board about" alleged irregularities in the bidding process for the Oak Ridge High School project.   (Doc. 70 at 9).   The School Board does not dispute that there were occasions when one or both of Hutchins and McIntosh engaged in such conduct; for example, Hutchins wrote a letter to the School Board requesting that the Protest Bond be returned, and McIntosh spoke at a School Board meeting to tell the members that Southern Atlantic was the low bidder on the project.   (Doc. 70 at 10).   In asserting that Hutchins and McIntosh did not engage in constitutionally protected activity on such occasions, the School Board points out that the bid protest was filed by Southern Atlantic, not Hutchins or McIntosh individually, and that neither individual was a principal on the protest bond.   (Doc. 38 at 5). Because of this, the School Board asserts, when Hutchins and McIntosh discussed the alleged bid process irregularities and requested the return of the bond and so forth, that was Southern Atlantic speaking, not Hutchins or McIntosh.   For example, in its reply, the School Board states that "[i]t is perfectly clear that Mr. McIntosh's 'speech' was on behalf of SAC and not himself individually as Mr. McIntosh never submitted a bid to anyone and never filed a bid protest or posted a bid protest bond.   The same is true of Mr. Hutchins."   (Doc. 83 at 3).

As noted, Hutchins and McIntosh disagree, arguing that a number of the statements they made to the School Board were made in their individual capacities rather than as representatives of Southern Atlantic.   (Doc. 70 at 10).   But this is beside the point.   Even assuming they were speaking on behalf of Southern Atlantic, Hutchins and McIntosh were still engaged in protected activity when they made their complaints to the School Board – or, at least, they were engaged in protected activity to the same extent that they would have been if they had been speaking on their

- 5 -

own behalf.³   The School Board has not cited, and this Court's research has not uncovered, a case in which otherwise-protected speech was found not to constitute First Amendment activity because it was made on behalf of another entity, such as a corporation.⁴

With regard to its second point, however, the School Board is on firmer ground.   Neither Hutchins nor McIntosh has suffered retaliatory acts that would likely deter a person of ordinary firmness from exercising his or her First Amendment rights.   Neither individual has been sued by the School Board, and they were not principals on the Protest Bond.   Hutchins and McIntosh argue that they suffered retaliation in the form of having "their company's bond attacked, which resulted in a tainted business reputation, sureties not consistently issuing bonds to SAE or SAC, a decreased bonding capacity for both entities, and ultimately lost profits."   (Doc. 70 at 15).   Some of these items could conceivably constitute adverse action in regard to Southern Atlantic, but not also to Hutchins and McIntosh individually.   Moreover, the Plaintiffs have not produced any evidence (aside from conclusory recitations in their affidavits) that Southern Atlantic's reputation was tarnished,⁵ or that it was ever unable to obtain a bond, or that it somehow lost profits as a result.⁶

---

³ The School Board does not make the argument that the content of the duo's statements is such that the statements are not entitled to First Amendment protection.   (Doc. 83 at 1 n. 1).

⁴ The Court notes that, in government employee cases, the degree of First Amendment protection afforded to speech depends upon whether the person was speaking as an employee or as a private citizen. *See, e.g., Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563 (1968) (holding that First Amendment restricts government's discretion to discipline an employee when that employee is speaking as a private citizen on a matter of public concern). But this is not a government employee case.

⁵ Beyond the lack of evidence, it does not even make sense that a government entity asserting a claim against a protest bond for fees and costs would tarnish the reputation of the entity that posted the bond – particularly when, as here, the claim was rejected by the surety.

⁶ The Plaintiffs argue that the instant motion should be denied because they still have discovery outstanding.   (Doc. 70 at 17-18).   However, the dispositive issue here is the harm

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 38) filed by the Defendant, School Board of Orange County, Florida is **GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 25, 2016.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

suffered by Hutchins and McIntosh; the Plaintiffs should be able to provide at least some evidence on this point without resorting to discovery.  In addition, the outstanding discovery listed by the Plaintiffs – "depositions of the School Board's expert witness, depositions of two Wharton-Smith employees, deposition of a prior School Board employee that was head of procurement services, interrogatories, request for admission, and a final document search of the School Board's recovered server" (Doc. 70 at 17-18) – would not shed light on the question of whether Hutchins and McIntosh suffered harm that would lead a person of ordinary firmness to refrain from exercising his or her First Amendment rights.   Accordingly, the Court will not deny the motion on this basis.