# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SOUTHERN ATLANTIC COMPANIES,
LLC, EDWARD HUTCHINS and
RAYMOND MCINTOSH,

                **Plaintiffs,**

v.                                           Case No:   **6:15-cv-254-Orl-31TBS**

SCHOOL BOARD OF ORANGE
COUNTY, FLORIDA,

                **Defendant.**

_____

## ORDER

      This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 98) filed by the Defendant, the School Board of Orange County, Florida (henceforth, the "School Board") and the Motion for Partial Summary Judgment as to Municipal Liability (Doc. 99) filed by the Plaintiffs, as well as the responses (Doc. 117, 125) and replies (Doc. 133, 140) filed by both sides.

## I.    Background

      Plaintiff Southern Atlantic Companies, LLC ( "Southern Atlantic") is an electrical subcontractor; Edward Hutchins and Raymond McIntosh are its vice president and president, respectively.[1]  In 2008, the School Board contracted with non-party Wharton-Smith, Inc. ("Wharton-Smith") to serve as the construction manager on a multiple-phase renovation of Oak

_____

[1] The Court entered summary judgment against Hutchins and McIntosh on April 25, 2016. (Doc. 104).

Ridge High School.   Southern Atlantic was selected to perform electrical work in Phase I of the project.

<u>Southern Atlantic's Bid Protest</u>

In 2010, Southern Atlantic submitted a bid to perform the electrical work for Phase II, but Wharton-Smith selected another electrical subcontractor.   On August 13, 2010, Southern Atlantic submitted a bid protest petition (Doc. 52-3) to the School Board.   In the petition, Southern Atlantic asserted that it had "timely submitted its subcontract bids" and had submitted "the lowest responsive and responsible bid" but Wharton-Smith had "failed to forward [Southern Atlantic's] final bid" to the School Board for its consideration.   (Doc. 52-3 at 3).   Southern Atlantic also alleged that the School Board – through its purported agent, Wharton-Smith – had violated state law by failing to select Southern Atlantic's bid.[2]   Accompanying the petition was a protest bond (henceforth, the "Bond") in the amount of $127,920.[3]   The Bond, which was issued by the surety International Fidelity Insurance Company ("IFIC"), identified the School Board as the obligee.

---

[2]  Specifically, Southern Atlantic asserted a violation of Fla. Stat. §1013.46, which requires, *inter alia*, that school boards award contracts for buildings or improvements to "the lowest responsible bidder".  Fla. Stat. § 1013.46(1)(a).

[3]  Florida Statute § 255.0516, titled "Bid protests by educational boards," provides in pertinent part that school boards may require anyone wishing to begin a bid protest to post a bond in the amount of:

> (1)   Twenty-five thousand dollars or 2 percent of the lowest accepted bid, whichever is greater, for projects valued over $500,000; and

> (2)   Five percent of the lowest accepted bid for all other projects,

> conditioned upon payment of all costs and fees which may be adjudged against the protestor in the administrative hearing. If at the hearing the agency prevails, it shall recover all costs and attorney's fees from the protestor; if the protestor prevails, the protestor shall recover from the agency all costs and attorney's fees.

Relying on an indemnification provision in the prime contract, the School Board tendered the defense of the bid protest to Wharton-Smith.   The School Board contended that the protest was actually a dispute between Southern Atlantic and Wharton-Smith (rather than one between Southern Atlantic and the School Board).   Wharton-Smith accepted the tender.

The School Board referred the bid protest to the Division of Administrative Hearings.   On November 10, 2010, the Administrative Law Judge entered a recommended order (Doc. 30-8) that found, *inter alia*, that Wharton-Smith was not an agent of the School Board, that the decision to award the electrical subcontract to someone other than Southern Atlantic was not a School Board decision, and therefore Southern Atlantic lacked standing to maintain the bid protest.   (Doc. 30-8 at 17-18).   Although the School Board had requested an award of attorney's fees and costs, the recommended order was silent as to the issue.   Southern Atlantic filed objections to the recommended order, but the School Board did not accept them, instead adopting the recommended order on February 8, 2011.   Southern Atlantic asserts that because the recommended order did not provide for the recovery of attorney's fees, the School Board was obligated under the Florida Administrative Code to return the bond shortly after adopting the recommended order.[4]

Southern Atlantic suit versus Wharton-Smith

On December 20, 2010, Southern Atlantic sued Wharton-Smith in state court in regard to the refusal to award it the Phase II electrical subcontract.   (Doc. 38-3).   On April 1, 2015, the state court judge entered summary judgment in favor of Wharton-Smith.   Southern Atlantic appealed, and the Fifth District Court of Appeal affirmed the lower court's decision on May 31, 2016.

---

[4] Specifically, Southern Atlantic points to Rule 28-110.005(4), which provides in pertinent part that "[i]f the agency prevails but the petitioner is not ordered to pay costs, the agency shall return the bond or alternate security to the petitioner."

<u>The School Board and Wharton-Smith seek recovery from the Bond</u>

On February 24, 2011, the School Board (through an outside attorney, Claire Ashington-Pickett) made demand on IFIC for the approximately $40,000 fees and costs incurred in connection with the bid protest.   Three months later, IFIC rejected the demand, in part on the grounds that the School Board had not incurred any damages because it had not reimbursed Wharton-Smith and might have defenses that would preclude it from having to do so.[5]   (Doc. 30-16 at 3).   On June 6, 2011, the School Board (again through Ashington-Pickett) notified IFIC that, to the extent IFIC's rejection was based on the fact that the School Board had not reimbursed Wharton-Smith, the School Board would assign its claim to Wharton-Smith.

On August 2, 2011, the School Board assigned the claim for reimbursement to Wharton-Smith.   The assignment was executed by John Morris, as "Chief Facilities Officer."   Neither the School Board nor the School Board's then-Superintendent, Ronald Blocker, signed off on the assignment.

The day after the assignment occurred, Wharton-Smith sued IFIC in state court.   Southern Atlantic subsequently intervened as a defendant.   Ultimately, Southern Atlantic and IFIC prevailed, and final judgment was entered in their favor on November 6, 2012.

Arguing that Wharton-Smith's claim had been frivolous, both defendants moved for sanctions under Fla. Stat. §57.105 to recover their attorney's fees.   After a hearing, the judge denied the motions for sanctions.   Wharton-Smith appealed the entry of judgment against it, but the Fifth District Court of Appeal affirmed the trial court's decision on October 1, 2013.   During the

---

[5] IFIC also argued that the statute pursuant to which the bond was posted – Fla. Stat. §255.0516 – only provided for a claim against the bond for "costs and fees which may be adjudged against the protestor in the administrative hearing," and the ALJ had not made such an award. (Doc. 30-16 at 2).

pendency of the appeal, Southern Atlantic filed a motion for sanctions, arguing that Southern Atlantic's appeal was frivolous.   The motion was denied.

<u>The federal case</u>

The instant suit was filed on October 21, 2014.   In its sole remaining count, Southern Atlantic asserts a First Amendment retaliation claim under 42 U.S.C. § 1983.   Southern Atlantic alleges that the School Board illegally retaliated against it for filing the bid protest, in which it complained about the actions taken by Wharton-Smith in failing to select it to perform the Phase II electrical subcontract.   The alleged retaliation consisted of (1) the School Board's asserting a meritless claim against the Bond and (2) assigning the Bond claim to Wharton-Smith.[6]

## II.     Legal Standards

### A.     Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.   Fed.R.Civ.P. 56.   Which facts are material depends on the substantive law applicable to the case.   *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   The moving party bears the burden of showing that no genuine issue of material fact exists.   *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir.1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue

---

[6] Initially, Southern Atlantic also argued that the School Board had retaliated against it by "substantially decreasing the amount of work" it received from the School Board and on School Board construction projects.   (Doc. 30 at 14).   However, Southern Atlantic appears to have abandoned this assertion, as it is not mentioned in either its motions for partial summary judgment or in response to the Defendant's motion.

for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986) (internal quotations and citation omitted).   Thereafter, summary judgment is mandated

against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of

fact for trial.  *Id*. at 322, 324–25, 106 S.Ct. 2548. The party opposing a motion for summary

judgment must rely on more than conclusory statements or allegations unsupported by facts.  *Evers*

*v. Gen. Motors Corp*., 770 F.2d 984, 986 (11th Cir.1985) ("conclusory allegations without specific

supporting facts have no probative value").

> The Court must consider all inferences drawn from the underlying facts in a light most
favorable to the party opposing the motion, and resolve all reasonable doubts against the moving
party.  *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the
non-movant's factual characterizations and legal arguments.  *Beal v. Paramount Pictures Corp.*, 20
F.3d 454, 458-59 (11th Cir.1994).

> B.    Section 1983 and Municipal Liability

> Title 42 U.S.C. §1983 provides a cause of action for "[e]very person who, under color of any
statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected,
any citizen … to the deprivation of any rights, privileges, or immunities secured by the Constitution
and laws."   The purpose of Section 1983 is to deter state actors from using the badge of their
authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if
such deterrence fails.  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (*citing Carey v. Piphus,*, 435 U.S.
247, 254-57 (1978)).

> It is well-settled that the government may not retaliate against individuals or associations for
their exercise of First Amendment rights by imposing sanctions for the expression of particular
views it opposes.  *Smith v. Arkansas State Highway Employees,* 441 U.S. 463, 464 (1979).   To

prevail on a Section 1983 First Amendment retaliation claim and prove a constitutional violation, a

plaintiff must establish that

> (1) his or her speech was protected by the First Amendment, (2) the
> defendant's retaliatory acts would likely deter a person of ordinary
> firmness from exercising his or her First Amendment rights, and (3) a
> causal connection exists between the retaliatory actions and the
> adverse effect on the protected speech.

*Bennett v. Hendrix*, 325 Fed. Appx. 727, 737 (11th Cir. 2009) (citing *Bennett v. Hendrix*, 423 F.3d

1247, 1250 (11th Cir. 2005)).

   A local government body, such as the School Board, cannot be held liable under Section

1983 on a theory of *respondeat superior*.   *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct.

2018, 56 L.Ed.2d 611 (1978).   Municipal liability is limited to "acts that are, properly speaking,

acts of the municipality – that is, acts which the municipality has officially sanctioned or ordered."

A plaintiff can establish § 1983 liability by identifying that he has been deprived of a constitutional

right by either an express policy or a widespread practice that, although not authorized by written

law or express municipal policy, is so permanent and well-settled as to constitute a custom and

usage with the force of law.   *Cuesta v. School Board of Miami-Dade County*, 285 F.3d 962, 966

(11th Cir. 2002) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)).

   In determining whether a policy or action represents official municipal policy, the court

must determine whether the decision at issue was made by "those officials or governmental bodies

who speak with final policymaking authority for the local governmental actor concerning the action

alleged to have caused the particular constitutional or statutory violation at issue."   *Jett v. Dallas*

*Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).   The issue of who is a final policymaker for purposes

of *Monell* is a question of law for the court.   *Id.*   A municipal official does not have final

policymaking authority over a particular subject matter when that official's decisions are subject to

meaningful administrative review." *Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997).

## III.     Analysis

The School Board offers several arguments in favor of summary judgment on Southern Atlantic's First Amendment retaliation claim.   First, the School Board argues that the retaliation at issue here would not have deterred a person of ordinary firmness from exercising his or her First Amendment rights.   More specifically, the School Board argues that every bid protestor knows that it must post a bond, and that the bond is subject to a claim for attorney's fees if the protestor loses. By posting the bond and filing its petition, the argument continues, the protestor has shown that the threat of a bond claim will not deter it from speaking out.   But this misconstrues Southern Atlantic's position.   Southern Atlantic is not complaining about a bond claim *per se*.   Rather, it is complaining about an (allegedly) unjustified bond claim, one which the School Board (and Wharton-Smith) had no chance of winning, but which had the effect of tying up the Bond, thereby reducing the amount of bonds that Southern Atlantic could obtain for other projects.   The Court cannot conclude, as a matter of law, that a potential protestor, fearful of facing an unjustified bond claim (and the resulting reduction in bonding capacity) would never opt to remain silent.

The School Board's second argument is much more persuasive.   To prevail under *Monell*, Southern Atlantic must establish that its alleged harm was the result of acts that the School Board "officially sanctioned or ordered."   As the *Monell* court explained, "[i]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."   *Monell*, 436 U.S. at 694.   In the instant case, the School Board contends that only it – and perhaps the Superintendent – are "final policymakers" for purposes of

*Monell*, and neither it nor the Superintendent approved the claim against the Bond or the transfer of that claim to Wharton-Smith.

Southern Atlantic does not argue that either the School Board or the Superintendent made the decisions at issue here.   Instead, the parties agree that the decisions to make a claim against the Bond and to transfer that claim to Wharton-Smith were made by the School Board's general counsel, Woody Rodriguez.   Southern Atlantic argues that Rodriguez was a final policymaker in regard to these particular decisions because the School Board had delegated final policymaking authority to him as to the settlement of legal disputes of up to $50,000.   (Doc. 99 at 22). According to Southern Atlantic, the decisions to assert a claim against the Bond and then to transfer the claim to Wharton-Smith were done as a way of "settling" Wharton-Smith's potential reimbursement claim (of roughly $40,000) for the money spent defending the School Board against the bid protest.[7]

This argument suffers from a number of flaws, however.   As the Eleventh Circuit Court of Appeals has repeatedly stated, a government employee such as Rodriguez is a final policymaker "only if his decisions have legal effect without further action by the governing body <u>and if the governing body lacks the power to reverse the … employee's decision</u>."   *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1293 (11th Cir. 2004) (emphasis added).   Southern Atlantic

---

[7] It is not clear from the record whether Rodriguez had been given the authority to settle legal matters up to $50,000, as Southern Atlantic contends.   The previous general counsel, Frank Kruppenbacher, testified that he had no authority to independently settle a claim of any amount. (Doc. 95-1 at 157).   He further testified any settlement authority he ever possessed came from the Superintendent informing him that "you have the authority to go up to 'X' or to go up to 'Y'". (Doc. 95-1 at 157).   The School Board argues that Rodriguez also lacked independent settlement authority, but the document it cites for this proposition – Rodriguez's affidavit (Doc. 97-1) – does not address the issue.   On the other hand, statements made by Rodriguez at a November 20, 2014 meeting suggest, at least arguably, that his office did have the authority to settle cases for less than $50,000.   (Doc. 59-9 at 3-4).   Accordingly, for purposes of resolving the instant motions, the Court assumes that Rodriguez had been given the authority to settle claims of up to $50,000.

has made no showing – such as, for example, by pointing to Florida statutes or Rodriguez's job descriptions – that the School Board could not have overruled or reversed Rodriguez's decisions regarding the Bond if it had wished to do so.[8]

Southern Atlantic argues that there was "no supervision or opportunity for meaningful review" of Rodriguez's decisions in regard to the Bond, and therefore the School Board effectively lacked power over them.   (Doc. 99 at 24).   However, Southern Atlantic's only support for this argument is that it made several requests to the School Board for the return of the Bond, and the School Board did not do so.   (Doc. 99 at 25).   This does nothing to support the notion that the School Board could not have taken action had it wished to do so.

Southern Atlantic makes a second argument that Rodriguez was a final policymaker when he made the decisions:   It contends that the School Board had specifically delegated final policymaking authority to him with regard to any issues involving the Bond.   In support, Southern Atlantic points to statements made by the School Board Chairman at a "pre-agenda" meeting held on January 11, 2011.   Hutchins appeared at the meeting and told the School Board:

> Actually, what I'm here for is to ask one simple question about the [Bond].   We put up a protest bond, I was just wondering what is going on with it.   That's my only question.

(Doc. 58 at 8).

In response, the School Board Chairman stated in pertinent part that

---

[8]  In support of the proposition that it (rather than Rodriguez) possessed the final policymaking authority with regard to the decisions at issue here, the School Board points to, *inter alia*, Fla. Stat. §1001.32(2), which provides that district school boards "shall operate, control, and supervise all free public schools in their districts and may exercise any power except as expressly prohibited by the State Constitution or general law," and Fla. Stat. § 1001.41(4), which gives school boards the power to contract, to sue, and to be sued.   The School Board also provides affidavits from Rodriguez (Doc. 97-1) and Morris (Doc. 93-1) – who executed the assignment to Wharton-Smith – stating that neither was a final policymaker in regard to the events at issue.

> What I would like to do … is just refer that matter to counsel and ask counsel to address that on behalf of the Board.   That's what I would suggest.

(Doc. 58 at 9).   Rodriguez then responded, without prompting, "We'll take a look at that, rush."

(Doc. 58 at 9).   Hutchins reiterated, "That's my only question."   (Doc. 58 at 9).

Clearly, this was simply an instance of a single Board member asking the General Counsel to answer a citizen's question regarding ongoing legal proceedings.   No other School Board member even spoke (or voted) in regard to the referral.   Despite Southern Atlantic's insistence to the contrary, there is no way to reasonably interpret this exchange as a delegation by the School Board of final policymaking authority as to all issues involving the Bond.

Southern Atlantic has made some other arguments in favor of a finding of municipal liability here, but upon review the Court finds that they do not warrant discussion.   As set forth above, Southern Atlantic has failed to make a showing that Rodriguez was a final policymaker and that his actions in regard to the Bond can be attributed to the School Board under *Monell*.[9]   Accordingly, the School Board is entitled to summary judgment.[10]

## IV.   Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 98) filed by the Defendant, the School Board of Orange County, Florida, is **GRANTED**, as set forth above.   And it is further

---

[9]   In addition, it should be noted that the assignment of the Bond was accomplished by Morris, not Rodriguez, and Southern Atlantic makes no argument that Morris was a final policymaker.

[10]   The School Board has raised additional arguments in favor of summary judgment, including that Southern Atlantic lacks evidence of animus on the part of the School Board or its employees, and that the *Noerr-Pennington* doctrine immunizes the School Board's actions.   As resolution of the *Monell* issue is sufficient to decide this case, the Court does not address these other arguments.

**ORDERED** that the Motion for Partial Summary Judgment as to Municipal Liability (Doc. 99) filed by the Plaintiffs is **DENIED**.   All pending motions are **DENIED AS MOOT**.   The Clerk is directed to enter judgment in favor of the Defendant and against all of the Plaintiffs, and close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 13, 2016.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party